J-S61004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM PLUMMER | : | |
| | : | |
| Appellant | : | No. 2042 EDA 2018 |

Appeal from the PCRA Order Entered June 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003689-2014,
CP-51-CR-0003690-2014, CP-51-CR-0015155-2013

BEFORE:  BOWES, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.:                    April 1, 2020

William Plummer appeals *pro se* from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA") in three underlying cases.[1]  We vacate and remand for further proceedings.

_____

[1] Appellant filed one notice of appeal listing all three docket numbers in violation of our Supreme Court's decision in ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018) (mandating separate notices of appeal at each docket implicated by the appealed-from order).  However, the PCRA court repeatedly advised Appellant that he could appeal its ruling by filing a single notice of appeal.  ***See*** N.T. 6/19/18, at 150, 153 (referencing "**an** appeal" and "**the** appeal" in discussing Appellant's appeal rights) (emphases added).  We have held that "such misstatements as to the manner that [the a]ppellant could effectuate an appeal . . . amount to a breakdown in court operations such that we may overlook the defective nature of [the] timely notice of appeal rather than quash pursuant to ***Walker***."  ***Commonwealth v. Stansbury***, 219 A.3d 157, 160 (Pa.Super. 2019).  Therefore, we shall address Appellant's claims rather than quash this appeal.

* Former Justice specially assigned to the Superior Court.

The trial court offered the following summary of the facts underlying Appellant's convictions for his direct appeal:

On September 29, 2013, at around 1:00 a.m., Ronald Elliot left his girlfriend, Kandis Fowler's, home at 3601 Conshohocken Avenue and went to the apartment building's parking lot. [Appellant] and two other men, holding fake police badges, jumped out of the bushes and yelled "Freeze, Police." Elliot ran out of the parking lot and across the street as the three men chased him. [Appellant] stopped pursuing Elliot and acted as a lookout standing on the sidewalk on the parking lot side of the street while the other two men caught Elliot across the street. After the two men hit Elliot four or five times in the head with a firearm, cutting him on the head, the two men took Elliot's watch, money and car keys. The men joined back up with [Appellant] and all three men ran to the parking lot. Elliot saw [Appellant] drive off in Fowler's Ford Expedition.

On February 5, 2014, after [Appellant] had been arrested and charged with [the] robbery of Elliot, Elliot received multiple phone calls from [Appellant]. [Appellant] threatened Elliot, explaining that if Elliot attended the next court date [Appellant] was going to firebomb the homes of Elliot's mother, girlfriend, and grandparent and kill Elliot. . . .

On February 9[,] 2014, Valerie and Russell Fowler, Kandis Fowler's parents, were living in a row home on Washington Lane. At about 4:00 a.m., Valerie Fowler heard a "bang" and smelled smoke. Russell Fowler went downstairs and saw a small fire in the back yard. After the fire was extinguished, Russell Fowler noted that the first floor back window was broken and saw a bottle with a wick in it in the back yard.

Detective Timothy Brooks of the Philadelphia Police's Bomb Disposal Unit and an expert in arson explosives arrived at the Fowler's home on Washington Lane shortly after the fire was extinguished. Outside the back of the house, Detective Brooks observed two bottles with wicks in them, one intact and the other shattered, which he believed to be Molotov cocktails. Detective Brooks observed strike marks on the back window and a broken bottle at the bottom of the basement steps that indicated that a Molotov cocktail had struck the house and fallen to the ground. The intact bottle contained liquid and a cloth wick, which smelled

of gasoline. Detective Brooks recovered the bottles, wicks, and liquid.

On February 9, 2014, Detective Kevin Sloan requested that Philadelphia prison authorities search [Appellant's cell]. The prison authorities recovered a cell phone in [Appellant's] cell. According to Cricket Communications' records, the cell phone recovered from [Appellant's] cell had been used to call Elliot four times on February 5, 2014.

[Appellant] testified on his own behalf. [He] asserted that in the first week of September 2013, Elliot gave [Appellant] $15,000 to purchase drugs for him. [Appellant] kept the money but did not purchase the drugs. [Appellant] asserted that on September 29, 2013, he was not on Conshohocken Avenue but instead was in Norristown. [Appellant] explained that he was unable to run because he was shot many years before. [Appellant] admitted that he had called Elliot but claimed the call was to arrange to return Elliot's money in exchange for Elliot not appearing at trial.

Trial Court Opinion, 6/4/15, at 2-4 (citations and footnotes omitted).

Appellant was charged with numerous crimes at the above-captioned docket numbers. Ultimately, a jury convicted him of one or more counts each of conspiracy, aggravated assault, robbery, robbery of a motor vehicle, arson, risking a catastrophe, intimidation of a victim, retaliation against a victim, and contraband (non-controlled substance). Appellant received an aggregate sentence of thirty to sixty years of incarceration. On direct appeal, this Court affirmed, and our Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Plummer*, 153 A.3d 1110 (Pa.Super. 2016) (unpublished memorandum), *appeal denied*, 159 A.3d 938 (Pa. 2016).

Appellant filed a timely *pro se* PCRA petition, and counsel was appointed. Counsel filed an amended petition, including only four of the many claims that

Appellant raised in his *pro se* filings. Displeased by the omissions, Appellant applied for the appointment of new counsel. Appellant also filed a letter in which he contended that PCRA counsel had a duty to pursue each and every claim that Appellant wished to raise, or to file "a hybrid **Turner**/**Finley** letter"[2] explaining why there was no merit in the claims he chose not to include in the amended petition. Case Correspondence, 5/4/18, at 1. Citing Appellant's lack of faith in his representation, counsel sought to withdraw and have the PCRA court appoint new counsel or hold a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81, 82 (Pa. 1998) ("When a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one."). For reasons not apparent from the certified record, the PCRA court denied the request without conducting a **Grazier** hearing. **See** Order, 5/8/18.

Appellant next filed a motion to proceed *pro se*, which the PCRA court addressed at the outset of the hearing it had scheduled on the claims raised in counsel's amended petition. Appellant informed the court that he did not want to represent himself, but rather he desired to have counsel pursue all of the claims that he wished to raise. N.T. PCRA Hearing, 6/11/18, at 10. The

---

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) (explaining procedure for PCRA counsel to withdraw from the representation where no meritorious issues exist); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*) (same).

- 4 -

PCRA court deferred addressing that issue, instead having PCRA counsel conduct the questioning of witnesses in connection with the issues raised in the counseled petition. *Id*. at 10-11. At the end of the hearing, the PCRA court scheduled another date for Appellant to present additional witnesses.

In between hearings, Appellant filed another motion to proceed *pro se*, citing "irreconcilable differences and the lack of communication on strategy." Motion, 6/14/18, at 1. At the second PCRA hearing, the PCRA court did not conduct a **Grazier** hearing or otherwise address Appellant's renewed request for self-representation. Instead, counsel continued to represent Appellant at the second hearing, presenting and cross-examining witnesses. Following the close of evidence and the arguments of counsel, the PCRA court invited Appellant to state "what it is that you want preserved for the record[.]" N.T. PCRA Hearing, 6/19/18, at 143. Appellant indicated, *inter alia*, that he wanted the *pro se* PCRA claims that counsel omitted from the amended petition to be "exhausted." **Id**. at 143-44. At that point, the PCRA court conducted a colloquy to determine whether Appellant wished to make a knowing and voluntary waiver of his right to counsel. **See** N.T. PCRA Hearing, 6/19/18, at 145-51 (quoted in relevant part *infra*). The PCRA court concluded that Appellant desired to proceed *pro se* on appeal, and ultimately entered an order allowing counsel to withdraw. **See** Order, 7/13/18.

Appellant filed a timely *pro se* notice of appeal. The PCRA court did not order him to file a Pa.R.A.P. 1925(b) statement of errors on appeal, and none

was filed. The PCRA court nonetheless authored an opinion pursuant to Pa.R.A.P. 1925(a), in which it explained the reasons behind its conclusion that the claims raised in counsel's amended petition merited no relief.

On appeal, Appellant presents many and varied claims of the ineffective assistance of trial, direct appeal, and PCRA counsel, including both allegations that were litigated in the PCRA court, and *pro se* contentions that were abandoned by counsel in the amended petition. **See** Appellant's brief at 4-8. Additionally, Appellant argues that the PCRA court erred by accepting PCRA counsel's determination as to the lack of merit in the *pro se* claims without requiring a **Turner**/**Finley** letter and conducting an independent review, and by failing to allow him to create a proper record as to the merits of the abandoned *pro se* claims by, e.g., opting not to order a Pa.R.A.P. 1925(b) statement. **Id**. at 18. The relief Appellant seeks from this Court is a new trial based upon the constitutionally-deficient performance of counsel, or, in the alternative, remand to the PCRA court for the proper resolution of his unlitigated claims. **Id**. at 11.

We begin with our standard of review. "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." **Commonwealth v. Williams**, 220 A.3d 1086, 1090 (Pa.Super. 2019). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due."

*Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (internal quotation marks and citation omitted).

As we find the issue dispositive, we begin with Appellant's claim that the PCRA court erred in its manner of handling Appellant's requests to pursue all of the claims raised in his *pro se* PCRA petition and supplement thereto.[3] The following legal principles inform our decision.

On a first PCRA petition, a petitioner is entitled to the assistance of counsel to guarantee that he has "at least one meaningful opportunity to have [his] issues reviewed." *Commonwealth v. Karanicolas*, 836 A.2d 940, 945 (Pa.Super. 2003) (citations and internal quotation marks omitted).

> This Court has admonished, accordingly, that the point in time at which a trial court may determine that a PCRA petitioner's claims are frivolous or meritless is after the petitioner has been afforded a full and fair opportunity to present those claims. Our [S]upreme [C]ourt has recognized that such an opportunity is best assured where the petitioner is provided representation by competent counsel whose ability to frame the issues in a legally meaningful fashion insures the [PCRA] court that all relevant considerations will be brought to its attention.

*Commonwealth v. Hampton*, 718 A.2d 1250, 1252 (Pa.Super. 1998) (internal quotation marks and citations omitted). "When appointed, counsel's duty is to either (1) amend the petitioner's *pro se* [p]etition and present the petitioner's claims in acceptable legal terms, or (2) certify that the claims lack

---

[3] The issue is dispositive because, as the Commonwealth correctly notes, the vast majority of the issues Appellant seeks to raise in this appeal were not preserved for our review. *See* Commonwealth's brief at 9-10.

merit by complying with the mandates of *Turner*/*Finley*." *Commonwealth v. Cherry*, 155 A.3d 1080, 1083 (Pa.Super. 2017).

If there are any issues of arguable merit, counsel must file an amended petition, exercising professional judgment to determine which claims to raise therein. This Court has held, in the context of a direct appeal, that a defendant may not compel counsel to pursue even "nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Commonwealth v. Morrison*, 173 A.3d 286, 292-93 (Pa.Super. 2017). Further, contrary to Appellant's argument, counsel may not, in the face of a client's insistence upon pursing claims counsel deems unworthy of pursuit, employ a hybrid approach of advancing some claims, but arguing against the merits of others. *Id*. Rather, "when counsel and an appellant disagree on which issues should be raised and/or briefed on appeal, counsel must only raise and/or brief the issues that counsel believes, consistent with counsel's ethical duty, to be nonfrivolous." *Id*.

Upon such disagreement between attorney and client, the client "is free to petition for the withdrawal of counsel in order for the [client] to attempt to proceed *pro se* or with privately-retained counsel." *Id*. Indeed, a "criminal defendant has a constitutional right to represent himself" and it is error for a court to ignore "a timely and unequivocal request" of a PCRA petitioner to proceed *pro se*. *Commonwealth v. Robinson*, 970 A.2d 455, 457 (Pa.Super. 2009). A court faced with a PCRA petitioner's request to proceed

*pro se* must make an on-the-record determination that the waiver of the right to PCRA counsel is made knowingly, intelligently, and voluntarily. **See Grazier**, **supra** at 82.

We now examine the facts of the instant case as revealed by the certified record. After PCRA counsel filed the amended petition abandoning most of Appellant's *pro se* claims, but before the Commonwealth filed its response to the amended petition, Appellant filed a thirteen-page letter disagreeing point-by-point with counsel's explanations for his professional assessment of the claims. **See** Case Correspondence, 4/24/18, at 1-13. Appellant promptly followed up with an application for new counsel, contending that PCRA counsel's amended petition was "defective" because he only included a handful of his claims. **See** Application for Relief for Appointment of New Counsel and Objections to PCRA Counsel's Defective Amended PCRA Petition, 4/27/18, at 3.

Shortly thereafter, PCRA counsel filed a motion to withdraw. Therein, counsel noted Appellant's recent filings in which he expressed his dissatisfaction with counsel, indicated that he had ceased work on Appellant's case, and requested that the court either appoint new counsel or hold a **Grazier** hearing to ascertain whether Appellant wished to proceed *pro se*. **See** Motion to Withdraw as Counsel, 5/3/18, at 3-4. On May 8, the PCRA court entered an order denying without explanation counsel's motion to

withdraw. Order 5/8/18. The PCRA court did not address or reference Appellant's *pro se* requests for counsel and to represent himself.

On May 22, 2018, again citing his disagreements with counsel, Appellant filed a motion to proceed *pro se* wherein he requested a ***Grazier*** hearing. ***See*** Application for Relief Seeking *Pro Se* Status, 5/22/18, at 2-3. At the June 11, 2018 PCRA hearing, the court acknowledged Appellant's pending motion, and asked him on the record whether he wanted to represent himself. Appellant responded "Well, you know . . . ." N.T. PCRA Hearing 6/11/18, at 7. The PCRA court cut him off, asked for a yes or no answer. ***Id***. Appellant replied "No, not at all." ***Id***. The court then conducted the hearing with counsel representing Appellant, scheduling a second date at its conclusion for Appellant to present additional witnesses.

Before the second hearing, Appellant filed another motion to proceed *pro se*, citing "irreconcilable differences and the lack of communication on strategy." Motion, 6/14/18, at 1. At the June 19, 2018 hearing, the PCRA court did not conduct a ***Grazier*** hearing or otherwise address Appellant's renewed request for self-representation. Rather, after the presentation of witnesses and arguments of counsel, the PCRA court invited Appellant to state "what it is that you want preserved for the record[.]" N.T. PCRA Hearing, 6/19/18, at 143. Appellant indicated, *inter alia*, "claims that I filed in my initial PCRA and my supplemental PCRA claim, I, J, L, N, O, R, T, U and Y I want raised. I don't know why my lawyer isn't raising them. He is saying he

believes there is no legal basis. I want these claims exhausted." *Id*. at 143-

44. The following exchange ensued:

> THE COURT: . . . Counsel was appointed to represent you. The representation of Counsel for a PCRA is slightly different than when Counsel is appointed for trial.
>
> It is his responsibility to review your initial petition and it is his responsibility to litigate the issues that he believes have merit.
>
> Now, he's filed the supplemental petition and we've had a hearing on the issues that he believes, in his professional opinion, have no merit. You have your statement on the record.
>
> If you want to continue, I mean, we already -- well, let me backtrack.
>
> We already went through, earlier last time that I saw you, whether or not you wished to represent yourself. So, this is the last chance before I send you back if you have a disagreement with your Counsel, you are certainly entitled to represent yourself and you would then be responsible for any subsequent motion.
>
> For instance, if I deny this petition then, if you want to represent yourself on appeal, you are welcome to do so. But I just have to ask you, as I told you before, I would have to ask certain questions to make sure that you understand the ramifications of representing yourself.
>
> So, when I last saw you on the 11th, you had indicated that you wished to have Counsel handle this hearing. The hearing is now over so I'm going to ask you the same question, do you want Counsel to continue to represent you or do you wish to represent yourself? You are always free to hire someone.
>
> THE DEFENDANT: Well, if I have him represent me, right, and he don't raise these claims, would these claims be waived if I go to Federal Relief Court?
>
> THE COURT: Well, I'm not an expert on Federal Relief. Legally, they are waived for the State.

So, I cannot give you advice for the Federal system. I can only tell you that what has been preserved right now is what we had the hearing on. That's an argument that you can make in Federal Court. You would have the transcript here available to you.

THE DEFENDANT: Well, I have to represent myself.

THE COURT: You don't have to represent yourself. You are choosing to represent yourself?

THE DEFENDANT: Yes. Yes.

. . . .

THE COURT: Do you understand that if I dismiss this petition, the next step is to file an appeal with Superior Court?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you would have to - -

THE DEFENDANT: Hold on. If you dismiss what?

THE COURT: Your petition.

THE DEFENDANT: Dismiss mine or [counsel's]?

THE COURT: I would be dismissing everything.

THE DEFENDANT: We have to do all of this over again?

THE COURT: No. I'm dismissing it. I can tell you right now I'm dismissing it. I will give your rights.

. . . .

THE DEFENDANT: Can I ask you one more question? You said something would be dismissed. What would be dismissed?

THE COURT: I am dismissing your entire petition.

THE DEFENDANT: My whole PCRA. So, I have to come at you with another one?

THE COURT: No. You would have to file -- that's what I wanted to make sure that you understand.

You have to file an appeal to Superior Court, would be your next step, within 30 days.

Now, I will be giving you those rights no matter what. The only difference is, whether or not Counsel would be doing it for you or if he doesn't do it, whether I have -- I mean Counsel would be, because he filed an amended petition, under the rules he would have to file the appeal for you.

But if you want to represent yourself, I will permit him to withdraw and then you will be responsible for filing the appeal. And I want to make sure that you understand that now, so that you can make the necessary steps to file the appeal, to get the notes of testimony, and to prepare yourself for the appeal.

So, it is your decision. Either Counsel continues or you represent yourself. Or again, as I told you, you are always free to hire another attorney.

So, you've told me that you wish to represent yourself.

THE DEFENDANT: Now, listen, see, my thing is I don't want nothing waived. I want to exhaust everything.

THE COURT: I understand that.

So, you now have a choice. You've told me you want to represent yourself.

THE DEFENDANT: I don't understand. I don't understand. Why would that --

THE COURT: Sir, I've already told you, I am dismissing your petition. I find it without merit.

So, do you wish --

THE DEFENDANT: Well --

THE COURT: No. It is my turn to talk.

Do you wish to represent yourself on appeal or do you want Counsel to continue?

THE DEFENDANT: If I represent myself, you dismissing this petition, his petition?

THE COURT: I'm dismissing it no matter who represents you. I find it has no merit.

THE DEFENDANT: Okay. Well, I would like to represent myself.

N.T. PCRA Hearing, 6/19/18, at 145-51.

Comparing the above-referenced case law with the transcript from the June 19, 2018 hearing, it is clear that the PCRA court properly informed Appellant about his rights and counsel's obligations. Counsel had no obligation to raise claims that he, in his professional judgment, deemed unworthy of pursuit. **See Morrison**, **supra** at 292-93. Nor, given his decision to pursue a number of issues he determined to have potential merit, was it proper for him to file a partial **Turner**/**Finley** letter as to the claims he chose to forgo. **See Morrison**, **supra** at 292-93. Further, the PCRA court properly made an inquiry, in accordance with **Grazier**, as to Appellant's desire to proceed *pro se* and the rights and responsibilities attendant with self-representation.

However, we are constrained to conclude that the PCRA court waited too long to address Appellant's repeated requests to represent himself. The on-the-record colloquy conducted by the PCRA court at the conclusion of the hearing leaves no doubt that, while Appellant preferred to have the assistance

- 14 -

of counsel, he would rather represent himself if he could not compel counsel to litigate all of the claims he wished to raise. Appellant's priority was to "exhaust" all of the claims raised in his *pro se* petition and supplement, and he would choose whatever course of action was necessary to avoid waiving any of them.

Had the PCRA court conducted the full *Grazier* colloquy when Appellant and counsel first brought their disagreements to the court's attention, Appellant would have been able to litigate any and all of his issues and preserve them for this Court's review. By waiting to conduct the colloquy until the hearing was concluded and only the issues raised in counsel's amended petition had been preserved, the PCRA court placed Appellant in a position to achieve none of his goals upon electing to proceed *pro se*.

Further, as Appellant contends that PCRA counsel failed to properly litigate the claims that he did pursue at the PCRA hearings, we decline to rule on the merits of those claims in this appeal. On remand, Appellant may attempt to present the PCRA court with the additional evidence that he claims PCRA counsel neglected to offer. *See*, *e.g.*, Appellant's brief at 6 (contending that PCRA counsel failed to investigate and subpoena an identified alibi witness).

Accordingly, we conclude that the PCRA court erred in failing to conduct a full *Grazier* hearing when it was first presented with the issue of Appellant's desire to exercise his right to have his day in court as to all of his PCRA claims.

We therefore vacate the order dismissing his petition, and remand for Appellant to file, *pro se*,[4] an amended petition raising each claim he wishes the PCRA court to resolve, including those that may have been litigated prior to this appeal. It is for the PCRA court to determine the appropriate procedure for resolving any claims in the amended petition that it had not previously addressed, and whether an additional hearing is necessary. Should Appellant find himself aggrieved after the PCRA court issues a final order resolving Appellant's additional claims, Appellant will be free to appeal from that order and challenge the PCRA court's rulings both prior and subsequent to the instant appeal.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/20

---

[4] As discussed *supra*, PCRA counsel was under no obligation to pursue all of Appellant's pro se claims in addition to the claims counsel deemed worthy of pursuit. **See Commonwealth v. Morrison**, 173 A.3d 286, 292-93 (Pa.Super. 2017). Thus, Appellant is not entitled to the appointment of new counsel on remand, but may either retain private counsel or proceed *pro se*. **Id**.